FILED

06/02/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0486

DA 19-0486

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 141

IN RE THE MARRIAGE OF:

ALEISHA SOLEM,

      Petitioner and Appellant,

  and

MICHAEL SOLEM,

      Respondent and Appellee.

APPEAL FROM:     District Court of the First Judicial District,
                     In and For the County of Lewis and Clark, Cause No. BDR-2015-379
                     Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Mathew Johnson, Mathew Johnson Law Office, P.C., Helena, Montana

           Marybeth M. Sampsel, Measure Law, P.C., Kalispell, Montana

      For Appellee:

           Michael J. Uda, Anna M. Kecskés, Uda Law Firm, Helena, Montana

                             Submitted on Briefs:  March 26, 2020
                                    Decided:  June 2, 2020

Filed:

                        _____
                                   Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Petitioner and Appellant Aleisha Solem (Aleisha) appeals the Findings of Fact, Conclusions of Law and Order issued by the First Judicial District Court, Lewis and Clark County, on July 25, 2019, which denied her July 10, 2018 Motion to Amend Parenting Plan.

¶2 We affirm, addressing the following restated issue:

*Did the District Court abuse its discretion by denying the Motion to Amend Parenting Plan?*

## FACTUAL BACKGROUND

¶3 Aleisha and Respondent and Appellee Michael Solem (Michael) were married in Indiana in 2008. They moved to Montana in 2010, when Aleisha accepted a job in Helena. Aleisha and Michael have one child together, E.S., who was born in Montana in 2012 and has lived here continuously since her birth. Aleisha and Michael divorced in July of 2015. At that time, they entered into a stipulated parenting plan providing for equal parenting time. Since July 15, 2015, Aleisha and Michael have enjoyed equal parenting time with E.S.

¶4 In July 2018, Aleisha filed a Notice of Intent to Move and a Motion to Amend Parenting Plan along with a proposed parenting plan, which she anticipated coming into force upon her relocation to Indiana. Aleisha's expressed desire to relocate to Indiana was to be closer to her family. Michael responded and objected to Aleisha's notice and motion, and likewise included his proposed parenting plan—anticipating E.S. to remain on a primary basis with him in the event Aleisha relocated to Indiana. The District Court

2

appointed a guardian ad litem (GAL) who filed her report on April 30, 2019. The court held a hearing on July 9 and 10, 2019. Following post-hearing briefing, the District Court denied Aleisha's motion to amend the parenting plan and ordered an amended parenting plan providing that E.S. would remain in Montana and reside with Michael on a primary basis in the event Aleisha decided to relocate to Indiana. Aleisha appeals.

## STANDARD OF REVIEW

¶5 We review the underlying findings in support of a district court's decision regarding modification of a parenting plan under the clearly erroneous standard. *Northcutt v. McLaughlin (In re G.M.N.)*, 2019 MT 18, ¶ 10, 394 Mont. 112, 433 P.3d 715 (citing *Guffin v. Plaisted-Harman*, 2010 MT 100, ¶ 20, 356 Mont. 218, 232 P.3d 888 (*Guffin II*)). We review a district court's conclusions of law to determine if they are correct. *In re G.M.N.*, ¶ 10 (citing *Tubaugh v. Jackson (In re C.J.)*, 2016 MT 93, ¶ 12, 383 Mont. 197, 369 P.3d 1028).

¶6 "A district court has broad discretion when considering the parenting of a child, and we must presume the court carefully considered the evidence and made the correct decision." *In re G.M.N.*, ¶ 11 (citation omitted). It is not the function of this Court to reweigh conflicting evidence or substitute its judgment regarding the strength of the evidence for that of the district court. *In re G.M.N.*, ¶ 11 (citing *In re A.F.*, 2003 MT 254, ¶ 24, 317 Mont. 367, 77 P.3d 266). The ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented. *In re G.M.N.*, ¶ 11

(citing *In re Marriage of Wolfe*, 202 Mont. 454, 458, 659 P.2d 259, 261 (1983)). Absent clearly erroneous findings, we will not disturb a district court's decision regarding a parenting plan unless there is a clear abuse of discretion. *In re G.M.N.*, ¶ 11 (citing *In re C.J.*, ¶ 13).

## DISCUSSION

¶7     *Did the District Court abuse its discretion by denying the Motion to Amend Parenting Plan?*

¶8     In general, a parent seeking to amend a parenting plan, must file a request to amend the parenting plan pursuant to § 40-4-219, MCA, and has the burden of establishing a change in the circumstances of the child has occurred and that the amendment is necessary to serve the best interests of the child. *In re Marriage of D'Alton*, 2009 MT 184, ¶ 11, 351 Mont. 51, 209 P.3d 251 ("[A] party seeking to modify a parenting plan pursuant to § 40-4-219, MCA, carries a heavy burden of proof." (quoting *In re Marriage of Oehlke*, 2002 MT 79, ¶ 17, 309 Mont. 254, 46 P.3d 49 (noting the party requesting the modification bears a heavy burden because the statute's policy is to preserve stability and continuity for the child))). The court is then directed by § 40-4-219, MCA, to consider the criteria in § 40-4-212, MCA, as well in determining the child's best interests. If the amendment is sought because of a parent's intention to move, that parent is additionally required to give notice pursuant to § 40-4-217, MCA. Section 40-4-220, MCA, provides the moving party who seeks amendment of a final parenting plan to submit an affidavit, together with the moving papers, setting forth facts supporting the requested amendment and provides the other parent to submit opposing affidavits. The court shall deny the motion unless it finds

4

adequate cause for hearing is established by the affidavits, based on the best interests of the child, in which case it shall set a date for hearing.

¶9 In cases where a parent seeks to relocate with a child, we have held courts must "consider the custodial parent's fundamental right to travel[.] . . . The custodial parent who bears the burdens and responsibilities of raising the child is entitled, to the greatest possible extent, to the same freedom to seek a better life for herself or himself and the children as enjoyed by the noncustodial parent." *In re Marriage of Cole*, 224 Mont. 207, 213, 729 P.2d 1276, 1280 (1986) (citations omitted); *Collie v. Pirkle (In re M.C.)*, 2015 MT 57, ¶ 13, 378 Mont. 305, 343 P.3d 569. In such cases we have found that the parent seeking the restriction must provide case-specific reasons and evidence pertaining to the child rather than general discussion about the effects of relocation on children. *In re M.C.*, ¶ 14.

¶10 However, "the custodial parent's freedom is qualified by the special obligations of custody, the state's interest in protecting the best interests of the child, and the competing interests of the noncustodial parent." *Cole*, 224 Mont. at 213, 729 P.2d at 1280. Both parents generally have co-equal fundamental constitutional rights to co-parent their children to the extent reasonably possible under the circumstances. *Troxel v. Granville*, 530 U.S. 57, 65-67, 120 S. Ct. 2054, 2059-61 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651-52, 92 S. Ct. 1208, 1212-13 (1972); *Erger v. Askren (In re A.R.A.)*, 277 Mont. 66, 70-71, 919 P.2d 388, 391 (1996), *superseded in part by statute as stated in Kulstad v. Maniaci*, 2009 MT 326, ¶ 56, 352 Mont. 513, 220 P.3d 595; *In re Guardianship of Doney*, 174 Mont. 282, 286, 570 P.2d 575, 577 (1977), *superseded in part by statute as stated in*

5

*Kulstad*, ¶ 56. Sections 40-4-212, -217, and -219(1), MCA, collectively embody and effect Montana's compelling interest in furthering and protecting the best interests of children by facilitating "the maximum opportunit[y] for the love, guidance[,] and support of both" parents to the extent reasonably possible under the circumstances. *In re M.C.*, ¶ 13 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280). *See also Sable Commc'ns of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126, 109 S. Ct. 2829, 2836 (1989); *New York v. Ferber*, 458 U.S. 747, 756-57, 102 S. Ct. 3348, 3354 (1982).

¶11   *Cole* and its progeny did not alter or affect the relative burdens of proof on the moving and non-moving parties under §§ 40-4-219 or -212, MCA. As a preliminary matter, *Cole* did not involve or address the scenario at issue here where a court has previously determined a particular joint or shared custody scheme based on the best interests of the child and the only subsequent change in circumstances for modification under § 40-4-219(1), MCA, is that one of co-equal custodial parents elects to move to another state. *Cole* more narrowly addressed a parent's right to travel as an important consideration, among others (including the child's rights and best interests, the State's compelling interest therein, and the other parent's co-equal right to parent his or her child) in determining the best interests of the child in an initial parenting plan determination under § 40-4-212, MCA. *Cole*, 224 Mont. at 210-13, 729 P.2d at 1278-81. Even in the initial parenting plan determination context, *Cole* stands for no more than the proposition that the best interests of the child remain paramount under § 40-4-212, MCA, and that, upon a moving party's showing that relocation with that parent is in the best interests of the child,

6

the burden shifts to the non-moving party to counter that initial showing with "sufficient proof" that it is in the best interests of the child to remain with the non-relocating parent. *See Cole*, 224 Mont. at 213, 729 P.2d at 1281. Contrary to the apparent assertion of Justice Baker's Dissent, *Cole* and *In re M.C.* are thus entirely consistent with our analysis in *In re G.M.N.* Accordingly, while the parent seeking amendment of the parenting plan has the burden of proof under § 40-4-219(1), MCA, to establish amendment of the parenting plan is in the child's best interest, in parental move cases the objecting party also has a responsive evidentiary burden to bring forth case-specific facts as to why the amendment should not be granted.

¶12 Cases involving a proposed relocation of a parent with a child are difficult as they are rarely amenable to compromise and involve balancing a parent's right to resettle in another location, the competing rights of the other parent, and protecting the best interests of the child. Although the mother has a constitutional right to travel and relocate, this right does not outweigh the father's right to have regular and ongoing parental contact with his daughter and the child's right to a relationship with her father. *In re G.M.N.*, ¶ 12. In cases where a parent is exercising her right to travel, such as in this case, the Court must try to reconcile the interests of both parents with the best interests of the child. *In re G.M.N.*, ¶ 12.

¶13 Aleisha contends the District Court erred in denying her request to relocate to Indiana with E.S. She asserts the District Court erred in limiting the GAL from testifying about the child's preference, violated E.S.'s constitutional right to have her wishes heard

7

in accordance with § 40-4-212(1)(b), MCA, and Michael failed to provide legitimate, case-specific reasons and evidence that it is not in E.S.'s best interests to relocate with Aleisha to Indiana. From review of the record, we do not find these assertions persuasive.

¶14 Although Aleisha now asserts the District Court erred in limiting the GAL from testifying as to E.S.'s wishes and violated E.S.'s constitutional right to have her wishes heard, she did not object when this occurred at the hearing. Not only did she not object, her counsel agreed with the court that E.S. was too young to have her wishes considered. Generally, we will not address an issue raised for the first time on appeal because it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. *Paschen v. Paschen*, 2015 MT 350, ¶ 39, 382 Mont. 34, 363 P.3d 444. As such, we conclude Aleisha has waived these arguments for appeal.[1]

---

[1] Despite this waiver, we do not find error in the manner in which the District Court addressed E.S.'s wishes. Given testimony which indicated to the court that E.S. was highly influenced to not voice communications contrary to Aleisha's desires and the court's finding that Aleisha involved E.S. in the parties' parenting dispute, the court had concerns that any desires expressed by E.S. may not be reflective of her desires but rather influenced by Aleisha. Further, although Aleisha purports to assert a constitutional claim on behalf of E.S., she cites § 40-4-212(1)(b), MCA, a statute, as authority for the claim that E.S. has the right to have her wishes considered. While § 40-4-212(1)(b), MCA, provides for consideration of a child's wishes in determining the child's best interests, § 40-4-219(1)(c), MCA, provides that in the circumstance of determining amendment of the parenting plan the court may consider the child's wishes with regard to the amendment if the child is 14 years of age or older. We have also determined that, although a child's wishes may be one appropriate consideration, they are not dispositive in a parenting action. Here, the District Court specifically articulated rational, well-supported reasons for not giving E.S.'s wishes compelling weight in considering her best interests—her young age and susceptibility to influence. In this determination we do not find the District Court's finding to be clearly erroneous.

8

¶15     As discussed in *In re G.M.N.*, §§ 40-4-212 and -219, MCA, set forth the factors a court considers in determining if amendment to a parenting plan is in the best interests of the child. In pertinent part, § 40-4-212, MCA, provides:

(1) The court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors, which may include but are not limited to:

(a) the wishes of the child's parent or parents;

(b) the wishes of the child;

(c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;

(d) the child's adjustment to home, school, and community;

(e) the mental and physical health of all individuals involved;

(f) physical abuse or threat of physical abuse by one parent against the other parent or the child;

(g) chemical dependency, as defined in 53-24-103, or chemical abuse on the part of either parent;

(h) continuity and stability of care;

(i) developmental needs of the child;

(j) whether a parent has knowingly failed to pay birth-related costs that the parent is able to pay, which is considered to be not in the child's best interests;

(k) whether a parent has knowingly failed to financially support a child that the parent is able to support, which is considered to be not in the child's best interests;

(l) whether the child has frequent and continuing contact with both parents, which is considered to be in the child's best interests unless the court determines, after a hearing, that contact with a parent would be detrimental to

9

the child's best interests. In making that determination, the court shall consider evidence of physical abuse or threat of physical abuse by one parent against the other parent or the child, including but not limited to whether a parent or other person residing in that parent's household has been convicted of any of the crimes enumerated in 40-4-219(8)(b).

(m) adverse effects on the child resulting from continuous and vexatious parenting plan amendment actions.

¶16 In pertinent part, § 40-4-219, MCA, provides:

(1) The court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. In determining the child's best interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:

(a) the parents agree to the amendment;

(b) the child has been integrated into the family of the petitioner with consent of the parents;

(c) the child is 14 years of age or older and desires the amendment;

(d) one parent has willfully and consistently:

(i) refused to allow the child to have any contact with the other parent; or

(ii) attempted to frustrate or deny contact with the child by the other parent; or

(e) one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent.

¶17 In its Findings of Fact, Conclusions of Law and Order the District Court thoroughly detailed its consideration of each of the factors referenced in §§ 40-4-212 and -219, MCA.[2]

---

[2] The District Court basically found the factors set forth in § 40-4-212(1)(f), (g), (j), and (m), MCA, were not implicated and were thus neutral factors.

The court recognized Aleisha desired E.S. to reside with her on a primary basis in Indiana and that Michael asserted if Aleisha relocated to Indiana it would be in E.S.'s best interests to remain in Montana and reside with him on a primary basis. The court determined this to be a neutral factor. The District Court specifically found E.S. to be too young, then age six, to rely heavily on her wishes and thus concluded this to be a neutral factor.

¶18 The District Court conscientiously considered E.S.'s interaction and interrelationships with her parents, finding they are "equally bonded with E.S." The court found E.S. to be adjusted to her school in Montana—doing "superbly"—and engaged in her Montana community with friends at school, participation in many extracurricular activities, and a significant relationship with her counselor. The court noted as E.S. was born in Montana and had never resided in Indiana, she had "no real ties to Indiana other than Aleisha's extended family." Upon these considerations, the District Court found these factors did not weigh in favor of amending the parenting plan as requested by Aleisha.

¶19 The District Court specifically considered the mental and physical health of the parties and E.S. E.S. was born with a cleft lip and palate defect for which she has received specialized care in the Helena community. Although Aleisha presented evidence that E.S. could get excellent medical care in Indiana, no evidence was submitted to indicate E.S. could not continue to receive adequate medical care in Montana.[3] After weighing the

---

[3] It is noted that prior to Aleisha desiring E.S. to move with her to Indiana, there was no evidence Aleisha had any issue with the specialized care E.S. received in Helena. Further, although E.S. requires periodic follow-up, no complicated medical procedures are expected for her in the upcoming future.

evidence, the District Court concluded this factor did not weigh in favor of amending the parenting plan as requested by Aleisha. The District Court concluded Aleisha and Michael to both be able to provide continuity and stability of care and equally meet E.S.'s developing needs, finding these factors to also be neutral.

¶20 Absent a finding that a parent's decision to move exemplifies a "willful and consistent" attempt to frustrate or deny the other parent contact with the child, the decision to move cannot be held against the moving party or considered as being against the best interests of the child. *In re M.C.*, ¶ 17. Here, based on the evidence presented it was reasonable for the court to weigh Aleisha's decision to move against her and consider it as not being in E.S.'s best interests. With regard to frequent and continuing contact with both parents, the court found that Michael was "the only parent that recognizes and appreciates the importance of this factor." At the hearing, Aleisha testified in the event Michael also relocated to Indiana she did not agree to maintaining a 50/50 parenting arrangement as they had been doing since their divorce. She only altered this rigid position post-hearing after admonishment by the District Court regarding her intentions in seeking to relocate. Although neither parent had yet willfully or consistently frustrated or denied the other parent's contact with E.S., from Aleisha's testimony the court determined her failure to recognize and appreciate the importance of frequent and continuing contact with both parents was not in E.S.'s best interest. The court concluded this factor did not weigh in favor of amending the parenting plan as requested by Aleisha. After considering and weighing the §§ 40-4-212 and -219, MCA, factors, the District Court, contrary to the

12

assertion made in Justice Baker's Dissent that the court required Aleisha alone to demonstrate her proposed amendment was in E.S.'s best interests, specifically concluded, "Michael has more than adequately demonstrated that E.S.'s best interests are better served if she remains in the Helena area" and denied Aleisha's motion to amend the parenting plan.

¶21 In sum, Aleisha now urges us to substitute her interpretation of the facts to find the District Court abused its discretion. We decline to do so. While it likely would have been prudent for the District Court not to quibble with Aleisha and her counsel in the manner it did, on this record we do not find an abuse of discretion. After having the opportunity to observe the witnesses, their demeanor, and their consistency in presentation, the District Court determined the credibility of the witnesses and weighed the evidence presented, including the conflicting perceptions and testimony, and made findings of fact supported by the evidence and correct conclusions of law.

¶22 Justice McKinnon's Dissent misapprehends the District Court's determination and issues in this case. Unlike *Guffin v. Plaisted-Harman*, 2009 MT 169, 350 Mont. 489, 209 P.3d 225 (*Guffin I*) and *Guffin II*, but similar to *In re G.M.N.*, this case does not involve a situation where the moving parent was determined to be the primary parent.[4] Michael and

---

[4] This reference to "primary parent" is not made to suggest a different burden of proof be imposed based on parenting arrangements as misconstrued by Justice Baker's Dissent. But rather in recognition of the reality we acknowledged in *Cole* that it is the primary parent frequently who "bears the burdens and responsibilities of raising the child." *Cole*, 224 Mont. at 213, 729 P.2d at 1280. As we recognized in *Cole*, the primary parent frequently has the predominant relationship with a child in terms of providing daily care, interaction, and emotional support as well as continuity of care—considerations required under §§ 40-4-212 and -219, MCA, in determining whether it is in the best interest of the child to relocate with the moving parent.

13

Aleisha jointly decided to move to Montana when Aleisha accepted a job as they did not want to raise a child in Indiana. Two years after moving here, E.S. was born. E.S. has lived in Montana her entire life. Michael and Aleisha shared a 50/50 parenting arrangement such that neither has been the primary parent—the District Court found Michael and Aleisha to have equally strong relational ties with E.S. Michael did not seek to restrict Aleisha's right to travel as asserted by the Dissent, but rather asserted it was not in E.S.'s best interest to relocate from Montana to Indiana. The District Court, likewise, did not restrict Aleisha from relocating to Indiana but it did consider the impact of such a move on E.S.'s best interests in consideration of the §§ 40-4-212 and -219, MCA, factors as it was required to do.

¶23 Justice McKinnon's Dissent attempts to manufacture a mistake of law when the District Court indicated "Montana law is clear that only a child of at least 14 years of age or older" to express a residential preference. While such comment was inaccurate as to Montana law, it was not legal error for the court to conclude E.S. to be too young, then age six, to rely heavily on her wishes—which Aleisha conceded to be the case. The Dissent then speculates about the District Court's perceptions of Aleisha's character and, since the court had concern with the GAL's reporting of E.S.'s wishes, the court being skeptical of the GAL's entire report. The District Court was not required to adopt and follow all recommendations of the GAL. The District Court was entitled to evaluate the testimony and report and adopt recommendations it determined to be in E.S.'s best interests. *In re Marriage of Tummarello*, 2012 MT 18, ¶¶ 34-35, 363 Mont. 387, 270 P.3d 28. The District

Court had opportunity to listen to the witnesses, observe their demeanor and apparent candor or lack of candor, and assess their motivations and credibility. Judgments regarding the credibility of witnesses and the weight to be given their testimony are within the province of the district court. *Tummarello*, ¶ 34. The District Court did just that. The Dissent would now like to substitute its judgment as to the credibility and weight it would assign to witnesses and evidence, cloaking it under the guise of a mistake of law.

## CONCLUSION

¶24 The District Court did not abuse its discretion by denying Aleisha's motion to amend the parenting plan.

¶25 Affirmed.


/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE


Justice Beth Baker, dissenting.

¶26 I would reverse the District Court because review of the record shows that it put the burden on Aleisha to prove that having E.S. relocate with her would be in the child's best interest, when the law places the burden on Michael to prove that it would not.

15

¶27 The fundamental right to travel grants each parent "the same freedom to seek a better life for himself or herself and the children." *In re M.C.*, ¶ 13 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280). Because both enjoy that right equally, the law places the burden on the non-moving parent to prove that the child's best interest favors a prohibition against accompanying the moving parent. We said in *Cole*:

> We believe that furtherance of the best interests of a child, by assuring the maximum opportunities for the love, guidance and support of both natural parents, may constitute a compelling state interest worthy of reasonable interference with the right to travel interstate. . . . We caution, however, that any interference with this fundamental right must be made cautiously, and may only be made in furtherance of the best interests of the child. To that end, *we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in the best interests of the child.*

*Cole*, 224 Mont. at 213, 729 P.2d at 1280-81 (emphasis added; internal citations omitted). We have applied this burden of proof consistently in the three decades since. *See In re C.J.*, ¶ 22 (reaffirming that "[o]ur precedent makes clear that [C.J.'s father]—as the parent seeking to restrict [the mother's] fundamental right to travel—bears the burden of proving that the restriction is in C.J.'s best interest."); *In re Custody of D.M.G.*, 1998 MT 1, ¶ 22, 287 Mont. 120, 951 P.2d 1377 (quoting *Cole* on burden of proof); *In re Marriage of Thorner*, 2008 MT 270, ¶¶ 26-30, 345 Mont. 194, 190 P.3d 1063 (discussing cases and recognizing the burden on the non-moving parent to provide legally sufficient proof to justify the restriction).

¶28 We have been clear that "[t]he parent seeking the restriction must provide 'case-specific proof' that the restriction is in the child's best interest: that is, 'legitimate, case-specific reasons and evidence pertaining to the particular child,' rather than 'general

16

discussion' about the effects of relocation on children of separation or divorce." *In re M.C.*, ¶ 14 (quoting *In re D.M.G.*, ¶¶ 24, 30). That standard requires that "the determination of a parenting plan should focus solely on the best interests of the children[,] and consideration of a parent's decision to relocate may not be held against the parent unless it exemplifies a willful and consistent attempt to frustrate or deny the other parent contact with the children." *In re G.M.N.*, ¶ 22 (citing *Guffin II*, ¶ 33).

¶29 Here, the District Court's comments indicate that it focused primarily on Aleisha's reasons and preparation for moving and on her change of heart for wanting to return to Indiana to be closer to her family after her marriage to Michael ended. The court's questions during the hearing reveal that it was requiring Aleisha to demonstrate why she should be allowed to make choices that affect the whole family instead of requiring Michael to show case-specific reasons why it was not in E.S.'s best interests to move with her mother.

¶30 This Court's decision in *In re G.M.N.* did not work a change in the burden of proof we established in *Cole*. In pointing out how the case differed from *Guffin II*, we noted that it did "not involve a situation where the moving parent was determined to be the primary parent." *In re G.M.N.*, ¶ 24. We then recounted all of the trial court's findings demonstrating its consideration of the child's best interest, including that G.M.N. had "no real ties" to the community where the mother intended to relocate, but had "significant relationships in her home community in Montana." *In re G.M.N.*, ¶ 24. This case bears similarities to and differences from both *Guffin II* and *In re G.M.N.*, reinforcing only that

17

each case comes down to a determination of the child's best interest in conjunction with each parent's fundamental right to "seek a better life for himself or herself and for the children." *In re M.C.*, ¶ 13. These are fact-specific determinations, and we have placed the burden squarely on the parent seeking to restrict the other parent's fundamental right to show why—aside from the challenges inherent to any family's decision to relocate—the child's best interest require the restriction.

¶31 Although the Court acknowledges that *In re G.M.N.* retains the evidentiary burden on the parent objecting to the child's move, Opinion, ¶ 11, the District Court interpreted the case differently. It cited *In re G.M.N.* for the principle that "current Montana law" did not require Michael to bear the burden of demonstrating a compelling interest to deny Aleisha's request. As explained above, this is an incorrect statement of the burden of proof.

¶32 Affirming the District Court's erroneous rationale shifts the burden of proof and penalizes parents who exercise their right to travel. The Court opines that the moving party first must show that relocation is in the best interests of the child, and then the burden shifts to the non-moving party to counter that initial showing with "sufficient proof" that it is in the best interests of the child to remain with the non-relocating parent. Opinion, ¶ 11 (citing *Cole*, 224 Mont. at 213, 729 P.2d at 1281). This is a new standard, not the proposition articulated in *Cole*. Any interference with a parent's fundamental right to travel "may only be made in furtherance of the best interests of the child. To that end, we require the parent requesting the travel restriction to provide sufficient proof that a restriction is, in fact, in

18

the best interests of the child." *Cole*, 224 Mont. at 213, 729 P.2d at 1281. The burden is solidly on the party seeking travel restrictions, not on the relocating party.

¶33 Of the best interest factors set forth in § 40-4-212, MCA, the District Court found four that weighed against amending the parenting plan. All were premised on Aleisha's move—her "relocation intentions," her "choice" to move—not on Michael's "case-specific facts" demonstrating why the amendment should not be granted. Both its written findings and oral comments demonstrate that the District Court placed the burden on Aleisha to prove why it should allow E.S. to accompany her to Indiana. It questioned her counsel, for example, "Why does [Aleisha] get to choose where they live?" And the court included in its written order a finding that "it was Aleisha who decided to move to Montana to take an employment position. . . . Now, contrary to her and Michael's stated desire, Aleisha seeks to raise E.S. in Indiana." The court also concluded that even though the evidence showed there would be excellent medical care available in Indiana, "there is no competent evidence that E.S. would not continue to receive adequate medical care in Montana." Again, this improperly shifted the burden to Aleisha. It was Michael's burden to show case-specific reasons against travel with "sufficient proof" that it is in the best interests of the child to remain in Montana. Here, the court challenged Aleisha to prove that E.S. would not continue to receive adequate medical care in Montana. Because the District Court found the remaining -212 factors neutral, it abused its discretion when it relied on an incorrect assessment of the standards of proof to conclude that it was in E.S.'s best interests to not amend the parenting plan.

19

¶34    If one parent moves out of state, unequal parenting time almost always will be the result. The best interest of the child cannot, as seems apparent from the Court's acceptance of the District Court's rationale, default to staying with the non-moving parent simply because that parent is not leaving; such a default standard would in effect penalize the moving parent for exercising her or his fundamental right. But now, presumably, the burden of proof will be on the moving parent to justify "leaving" when the existing parenting plan gives that parent "joint or shared custody." Opinion, ¶ 11. A parent who "shares" residential time with the child's other parent would bear the burden of proof, but a parent who has the child on a "primary" basis would not. We have never articulated different standards for different parenting arrangements and should not do so here. This arbitrary distinction creates confusing, shifting standards implicating a parent's fundamental right to travel. The right to travel will be respected and the law more stable and easier to apply if we recognize one consistent standard, as we have until today.

¶35    Notably, Michael said in open court that he also would move if E.S. relocated to Indiana, just as he agreed to do when Aleisha obtained employment in Montana. In that scenario, E.S. would maintain shared time with both parents instead of the parents living in different states. The court commented that Michael's willingness to move "shows what a kind of person he is, that he would step up and serve his child's best interest under any circumstance." This may be true, but the court's decision is to be premised on what parenting arrangement is in the child's best interest, not on which parent it believes is more selfless. "[I]n cases implicating a parent's exercise of his or her fundamental right to travel,

'it is the court's task to attempt to reconcile the interests of both parents with the best interests of the child.'" *In re M.C.*, ¶ 13 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280). Michael's willingness to move reconciles the parents' interests with those of E.S., and the District Court's own observations undercut the conclusion that the child's best interests would support the restriction it imposed.

¶36 I would reverse the District Court's order and remand for the court to reconsider the evidence applying the appropriate burden of proof.

/S/ BETH BAKER

Justice Laurie McKinnon, dissenting.

¶37 A district court's decision will not be disturbed on appeal unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to a clear abuse of discretion. *Guffin II*, ¶ 20. The test for abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Guffin II*, ¶ 20.

¶38 In my opinion, it was a mistake of law for the District Court not to recognize that Michael bore the burden of demonstrating the best interests of E.S. required a restriction on Aleisha's fundamental right to travel. It was also a mistake of law for the District Court to conclude that a six-year-old child could not express a preference regarding where the child wanted to live. Finally, in my opinion, a review of the record in this case reveals that the District Court abused its discretion by making findings and conclusions that constituted

21

not only mistakes of law, but were impertinent to the issues and unsupported by the evidence presented. Therefore, I respectfully dissent.

¶39 Our precedent makes clear that Michael—as the parent seeking to restrict Aleisha's fundamental right to travel—bore the burden of proving that the restriction was in E.S.'s best interest. *In re C.J.*, ¶ 22. The exercise of this fundamental right may be restricted only by a compelling state interest. *In re M.C.*, ¶ 12. Such a compelling interest may be found in furtherance of the best interest of a child. *In re M.C.*, ¶ 13. "A custodial parent 'is entitled, to the greatest possible extent, to the same freedom to seek a better life for himself or herself and the children as enjoyed by the noncustodial parent.'" *In re M.C.*, ¶ 13 (quoting *Cole*, 224 Mont. at 213, 729 P.2d at 1280). A restriction on a parent's fundamental right to travel must be imposed cautiously and only where there is sufficient "case-specific proof" with "legitimate, case-specific reasons and evidence pertaining to the particular child," rather than a general discussion about the effects of relocation. *In re M.C.*, ¶ 14 (citations omitted). In those cases in which a parent seeks to relocate and modify a parenting plan pursuant to § 40-4-219(1)(e), MCA, the court must reconcile the interests of both parents with the best interest of the child. Any decision as to the custody of a child must be based upon a careful examination of the factors set forth in both §§ 40-4-212 and -219, MCA. *Guffin II*, ¶ 33. Yet, a review of the record in this case reveals the District Court did not recognize Aleisha's fundamental right to travel or that Michael bore the burden of demonstrating a restriction on that right was in E.S.'s best interest. The District Court disregarded the GAL's report based on mistakes of law, inappropriately focused on

22

the motivation behind Aleisha's decision to move, and made unsupportable findings regarding Aleisha's character in its decision to amend the parenting plan.

¶40    It is important to first discuss the observations made by the court regarding Aleisha's character which affected the entire proceeding and subsequent District Court order.  There is overwhelming evidence in the record that the court found Aleisha was manipulative, and that she manipulated the observations and professional opinions of E.S.'s counselor, school principal, and GAL as to E.S.'s best interest.  The court's belief that Aleisha was manipulative distorted facts that should have weighed in Aleisha's favor into evidence of her manipulative nature.[1]  The only evidence in the record in support of the court's characterization of Aleisha came from Michael himself, who asserted that he witnessed E.S. lying on the phone to Aleisha about spending time with Michael's ex-girlfriend and her children:

> [T]here was one event just before that where we had actually spent most of a Sunday over at [my ex-girlfriend] and the kids' house playing games, watching movies and things, and when we went home, her mom called at 8:30 that night for our nightly phone call and asked her what she did that day, and [E.S.] said, "Oh, we basically just stayed home and played."

The court surmised from this testimony that E.S. "is afraid of Aleisha to the point of lying to her to avoid getting in trouble."  The District Court made this finding without reference

---

[1] For example, the GAL's report provides that E.S.'s "counselor made clear to the GAL that being apart from Aleisha would be devastating and detrimental for E.S."  In contrast, the District Court's conclusions state that regardless of the GAL's report, "Since [the counselor] did not testify, it is unknown how much she 'hears' from Aleisha as to E.S.'s mental state and anxiety."  However, the court still referenced E.S.'s close relationship with her counselor as a fact in favor of not amending the plan to allow E.S. to move to Indiana with Aleisha.

to the GAL's report which provides that E.S.'s counselor told the GAL that "E.S. began reporting that [Michael] would tell [E.S.] not to tell Aleisha about when [E.S.] saw his girlfriend or drove with her, and [E.S.] became very guarded and closed."[2] Given this omitted fact, discussed in both the GAL's report and in her testimony to the court, E.S. could have just as easily been lying to Aleisha at the behest of Michael, not out of fear of "endur[ing] Aleisha's wrath about [Michael's ex-girlfriend]." In addition, the District Court's dismissal of the GAL's report recommendations and other relevant facts contained in the report were a result of its mistaken understanding of the correlation between §§ 40-4-212 and -219, MCA, and the way those statutes inform one another. Although I agree with the Court that Aleisha waived her argument concerning the District Court's decision to limit the GAL from testifying about E.S.'s wishes, the District Court's mistake of law still resulted in the disregarding of relevant facts from the GAL's report and testimony, all necessary information for determining the best interest of E.S.

¶41 The District Court also found that Aleisha: (1) discussed her general concerns about Michael's previous significant other with E.S.; (2) reported her concerns regarding Michael's previous significant other to E.S.'s pediatrician while E.S. was in the room; and (3) discussed safety precautions with E.S. in the event she felt unsafe. Michael asserted that Aleisha's stated concerns about his ex-girlfriend were not valid, and that "E.S.'s fears were being driven by Aleisha sharing too much information with E.S. about [Michael's ex-girlfriend]'s past, which caused E.S. to be unnecessarily fearful of the

---

[2] Michael denies he told E.S. to lie to her mother.

24

situation." Instead of viewing these actions by Aleisha as evidence of a concerned parent taking steps to ensure her child's welfare, Aleisha's precautions led the court to find that "Aleisha sought to control, sabotage, undermine and manipulate E.S.'s relationship with [Michael's ex-girlfriend]." The GAL's report states:

> E.S. reported to Aleisha, her counselor, and her teachers that one of [Michael's ex-girlfriend]'s children, a male who is one year younger than [E.S.], was repeatedly violent toward [E.S.] and also tried to trap [E.S.] and then kissed her inappropriately. . . . The counselor for E.S. also report[ed] that E.S. was "a wreck" during this time when she was spending a great deal of time with [Michael's ex-girlfriend] and her child. The school reported that there were numerous "red flags" and [E.S.] was "teary" and "unsettled" during that time. E.S. also reported to her counselor that she was generally afraid of [Michael's ex-girlfriend]'s son and at times resisted going to [Michael]'s house when [Michael's ex-girlfriend's son] would be there with his mom.

The District Court ignored these assertions by E.S.'s GAL, counselor, and school officials, and instead found the source of E.S.'s anxiety to be Aleisha's "interference" with E.S.'s relationship with Michael's ex-girlfriend.

¶42 A district court is required to determine child custody matters in accordance with the best interests of the child, considering a variety of statutory factors contained in § 40-4-212, MCA. *Guffin I*, ¶ 7. Included in these "best interest" factors are "the wishes of the child." Section 40-4-212(1)(b), MCA. In addition to those required considerations in § 40-4-212, MCA, a district court faced with amending a prior parenting plan has discretion to also consider the factors in § 40-4-219, MCA, including whether "the child is 14 years of age or older and desires the amendment [to the parenting plan]." Section 40-4-219(1)(c), MCA. Section 40-4-212, MCA, places no age restriction on the

25

child whose wishes are *required* to be considered by a court. That § 40-4-219(1)(c), MCA, provides a court with a discretionary additional consideration in which age becomes a factor in amending a parenting plan, does not replace the mandatory requirement placed upon the court in § 40-4-212, MCA.

¶43 The District Court concluded that "Montana law is clear that only a child of at least 14 years old can express a residential desire," to decide that the GAL's "recommendation should not be adopted as it would not be in E.S.'s best interests to move to Indiana with Aleisha and [Aleisha's boyfriend]." At the hearing, the court told Aleisha's counsel that it had "some serious concerns about [the GAL]'s report" and pointed to the GAL's reporting on E.S.'s wishes as the source of its concerns: "This child is not even seven years old, and [the GAL] indicates the child's preference. I believe it's already been established she can't express an interest because of her age . . . ." This was a mistake of law as to the proper scope of the GAL's report which caused the court, in part, to disregard the GAL's recommendation as to E.S.'s best interest.

¶44 It is true that a child's wishes are not dispositive in a court's decision to amend a parenting plan, and a court may choose to give a child's wishes less weight if the child is especially young or has a disability which renders his wishes undeterminable. *See Cole*, 224 Mont. at 210, 729 P.2d at 1279. But in this instance, the District Court's reasons for disregarding the wishes of E.S. were not related to her susceptibility or young age as the Court asserts; rather, the District Court's reasoning was related to its incorrect interpretation of the interplay between §§ 40-4-212 and -219, MCA, and subsequent

26

rejection of the GAL's consideration of E.S.'s wishes. Accordingly, I would conclude the District Court's handling of §§ 40-4-212 and -219, MCA, was an incorrect interpretation of Montana law.

¶45 The District Court's mistake of law and subsequent disregarding of the GAL's recommendation also led the court to disregard certain relevant facts that should have been included in its determination of the best interests of E.S. For example, in analyzing "the interaction and interrelationship of the child with the child's parent or parents" under § 40-4-212(1)(c), MCA, the GAL concluded that, "in spite of having a strong relationship with [Michael] too, the GAL believes that this factor weighs in favor of allowing E.S. to move to Indiana with Aleisha." The GAL's factual support for her conclusion stated:

> [T]he GAL is concerned about the stress and anxiety that [Michael]'s relationship with his previous significant other has caused E.S. in the past. . . . In addition, given the severity of the allegations against his significant other, as well as, documentation provided by Aleisha that conclusively proves [Michael's ex girlfriend]'s history of methamphetamine use, as well as, the incarceration of the father of the child who was violent and sexual with E.S., the GAL does have concerns about the interactions that E.S. may have if she were to remain primarily with [Michael] in Helena, without Aleisha around to provide support to E.S. These concerns have been expressed *not only by Aleisha, but also by the school and her counselor*.

(Emphasis added). Although presented with this information, the court concluded that the parents are "equally bonded with E.S. despite [the GAL]'s conclusion and testimony to the contrary." While a trial court is free to accept what testimony it finds credible and disregard that which it concludes is not, the recommendation of a court-appointed GAL deserves some consideration. After reviewing the record in these proceedings, the court did not consider the factual support offered by the GAL for the conclusions in her report.

27

¶46 Under § 40-4-212(1)(e), MCA, "the mental and physical health of all individuals involved," the District Court concluded that "there is no competent evidence that E.S. would not continue to receive *adequate* medical care in Montana," which led to it weighing this factor against amending the plan to allow E.S. to move to Indiana with Aleisha. (Emphasis added). However, Aleisha provided the GAL and the court with substantial evidence that the quality of care E.S. would receive in Indiana would greatly surpass the care available in Montana. As discussed in the GAL's report, if E.S. were to relocate to Indiana, she could receive care from the Craniofacial Center at the Peyton Manning Children's Hospital, "one of six designated cleft palate and cleft lip treatment programs in North America." Even E.S.'s Montana medical care team admitted that the quality of E.S.'s medical care would greatly increase in Indiana, given more specialized expertise for E.S.'s condition is available there. The District Court disregarded this evidence, as shown by its conclusion under § 40-4-212(1)(e), MCA. A determination of a child's best interest does not ask what is *adequate* for the child, but what is *best* for the child. The court's dismissal of the GAL's report led to its failure to consider evidence of superior medical care available for E.S.

¶47 Finally, the court's focus on whether Aleisha would agree to resume the parties' 50/50 parenting plan if Michael were to move to Indiana to be closer to E.S, was extraneous and not relevant to a best interest determination under §§ 40-4-212 and -219, MCA. In *Guffin II*, we held that "the District Court's focus on [Mother]'s decision to move as 'unilateral,' and its finding that her failure to follow the notice procedures in

28

§ 40-4-217, MCA, was 'unconscionable,'" amounted to an abuse of discretion because those determinations "demonstrate[d] that the District Court was swayed more by [Mother's] decision to move than it was by the children's best interests." *Guffin II*, ¶ 32. We made clear that the decision to overturn the District Court's ruling in *Guffin II* "should not be construed as mitigating for or against any particular parenting plan; rather, it [was] simply a reaffirmation of what the district court's focus must be when faced with the prospect of amending a parenting plan." *Guffin II*, ¶ 34.

¶48 This Court distinguished *In re G.M.N.* from *Guffin II*. *In re G.M.N.*, ¶¶ 21-22, 24. Although there were some factual differences of note between *Guffin II* and *In re G.M.N.*, the important distinction in *In re G.M.N.* was that the court did not focus on "punishing [Mother] for her impending relocation," but instead "carefully considered the best interest factors under §§ 40-4-212 and -219, MCA." *In re G.M.N.*, ¶ 24. Here, the focus of the District Court's inquiry was on the reasons and motivation, in the first instance, for the family's move to Montana and, next, the reasons for Aleisha wanting to move back to Indiana. The court then considered what the parenting plan would be if Michael chose to relocate to Indiana.

¶49 The GAL report recommended that, if Michael chose to move to Indiana to be close to E.S., then Aleisha and Michael should resume their 50/50 parenting plan. Aleisha, testifying at trial, stated that she agreed with the GAL's report recommendations. When asked why she did not include any information in her proposed parenting plan addressing the event of Michael moving to Indiana, Aleisha responded, "I have no information about

29

his move." Her attorney followed up, "Okay. And at . . . this time, you're still not aware if he is going to move?" to which Aleisha replied, "That's correct." Later, on cross-examination, Aleisha refused to agree to a 50/50 parenting time split without having more information about the differences in Montana and Indiana law relative to amending a parenting plan, and without any information or knowledge regarding Michael's plans to relocate. After the hearing, but before the District Court issued its order, Aleisha submitted an amended proposed parenting plan, in which she provided that, if Michael relocates to a place in Indiana within a 45-minute drive of Aleisha, then the parties would resume their 50/50 parenting time split.

¶50     Aleisha filed a supporting affidavit together with a motion for an amended final parenting plan on July 5, 2018, in which she declared, "I am planning on moving as soon as the Court approves a new parenting plan. I will be living in Franklin Township, Indianapolis, Indiana where I expect to readily obtain new employment." On June 10, 2019, over a year after her affidavit was filed, Aleisha testified that, instead of residing in Franklin Township as her previous affidavit provided, she had instead opted to put in an offer on a house in Carmel, Indiana, a neighborhood on the north side of Indianapolis. Aleisha testified that she chose Carmel because of its proximity to a great school for E.S. and legal jobs in northern Indianapolis, and its central location between Aleisha's grandparents' house and her sister's house. The District Court found "Aleisha's hearing testimony [was] not substantially credible" and that "Aleisha's hearing testimony contradicted her affidavit representations relative to where [Aleisha] would be moving."

30

¶51 The District Court's order referenced Aleisha's refusal at trial to agree to a 50/50 parenting split if Michael relocated to Indiana, and her inconsequential change in preferred locale, as support for its "serious concerns regarding Aleisha's relocation intentions" and its assertion that "Michael is the only parent that recognizes and appreciates the importance of" E.S.'s frequent and continuing contact with both parents. Near the conclusion of the hearing, the District Court inquired of Aleisha's counsel: "Why—why in the world would I ever amend this plan without any confidence that this father would have the same amount of parenting time with this child if he followed them to Indiana? Why would I ever amend it? Why would I ever say no?" Aleisha's counsel informed the court that it could provide for the 50/50 split in the parenting plan, if it preferred. The court then inquired, "Why does she get to choose where they live?" and later stated that the family moved to Montana "because of her," referring to Aleisha. In its findings, the District Court noted that "[a]t some point when they were living in Indiana, Michael testified without any contradiction from Aleisha, that they discussed a mutual desire to not raise their children in Indiana." From this fact, the court drew the following conclusion: "Moreover, it was Aleisha who decided to move to Montana to take an employment position. Michael voluntarily joined Aleisha on her move to Montana. In this regard, their decision to move to Montana, circumstantially, confirms their desire to not raise their children in Indiana." Aleisha's submittal of amendments to her proposed parenting plan were characterized by the court in its order as an "about face" and "a knee jerk reaction to the Court's stern

discontentment with her hearing testimony relative [to] whether E.S. would have equal parenting time with her parents."

¶52 The District Court found that both Michael and Aleisha are good parents, but nonetheless found every single factor examined under §§ 40-4-212 and -219, MCA, weighed in favor of not permitting E.S. to relocate to Indiana with Aleisha. Aleisha's decision to move, changes in her decision as to which exact suburb of Indianapolis she would move to, and her refusal to agree to a 50/50 parenting split without more information, "do[] not bear on the ultimate and fundamental question of what type of parenting plan is in the best interests of the child[]." *Guffin II*, ¶ 31. The court used testimony regarding the 50/50 split parenting time as evidence against Aleisha, where the court possessed the power to include such a provision in the parenting plan, regardless of Aleisha's agreement.

¶53 I disagree with the Court when it says that "Aleisha now urges us to substitute her interpretation of the facts to find the District Court abused its discretion." Opinion, ¶ 21. Aleisha does not ask this Court to consider the facts discussed in the District Court's order, and then use those same facts to reach a different conclusion. Instead, Aleisha raises legitimate arguments that the District Court refused to consider certain facts in its best interest analysis and relied upon its own mistakes of law as support for its decision. A court may not penalize a parent for exercising her right to travel by holding her parental rights hostage, without a showing that to do so would be in the child's best interest. In my opinion, Michael did not meet his burden to establish a restriction on Aleisha's

32

fundamental right to travel was necessary to protect E.S.'s best interest.  My conclusion is based on a thorough review of the record.

/S/ LAURIE McKINNON